DeVILBISS, Appellant,

v.

SCHADE et al., Appellees.

[Cite as *DeVilbiss v. Schade*, 186 Ohio App.3d 441, 2010-Ohio-493.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23484.

Decided Feb. 12, 2010.

Gary J. Leppla, for appellant.

Jeffrey C. Turner and Dawn M. Frick, for appellees.

---

GRADY, Judge.

{¶ 1} This is an appeal from a final judgment of the court of common pleas in an action commenced by a township police officer following termination of his employment. The action was brought on two claims for relief: the officer's administrative appeal contesting his termination and a claim for relief alleging tortious interference with the officer's employment relationship by the township's chief of police. The common pleas court affirmed the officer's termination in the administrative appeal. The court also granted the police chief's motion for summary judgment on the tortious-interference claim, finding that the police chief was privileged to act as he did in relation to the officer's termination. On review, we affirm the summary judgment for the police chief, but reverse the judgment rendered in the administrative appeal on a finding that the officer's termination was violative of proceedings prescribed by statute.

I

{¶ 2} Plaintiff-appellant, Randy DeVilbiss, was appointed a police officer of Jackson Township, in Montgomery County, in 2002. In 2008, following and in response to a series of complaints made by a resident of the township concerning DeVilbiss, the Jackson Township Chief of Police, defendant-appellee Jon Schade, ordered DeVilbiss to submit to a psychological examination as part of a "Fitness for Duty" review. DeVilbiss refused, and on July 7, 2008, Chief Schade served DeVilbiss with a "Charging Form," signed by Chief Schade and alleging that DeVilbiss refused to obey a lawful order of a superior officer in violation of Section 1.18 of the General Orders of the Jackson Township Police Department. The notice further stated that the charges would be heard by the township board of trustees at its next regular meeting on July 14, 2008.

{¶ 3} The scheduled meeting of the township trustees was canceled due to the illness of one trustee. The meeting and a hearing of the charge against DeVilbiss was rescheduled for July 21, 2008, and DeVilbiss was so advised. On that date, an attorney representing DeVilbiss notified Chief Schade by letter that DeVilbiss declined to attend the hearing because proper procedures governing the charge filed against DeVilbiss had not been followed. At the hearing, the township trustees reviewed the charge against DeVilbiss and terminated his employment.

{¶ 4} DeVilbiss commenced the action underlying this appeal in the court of common pleas on August 1, 2008, on two claims for relief. One claim was an R.C.

2506.01 administrative appeal brought pursuant to R.C. 515.49(B)(3), challenging the legality of DeVilbiss's termination by the township trustees. The other was a civil claim brought against Chief Schade on an allegation of tortious interference with a business relationship arising from the orders DeVilbiss was given by Chief Schade that led to the charge against DeVilbiss.

{¶ 5} Following responsive pleadings, the court, on May 11, 2009, affirmed DeVilbiss's termination. The court also granted a motion for summary judgment for Chief Schade on DeVilbiss's tortious-interference claim, finding that Chief Schade was privileged to engage in the conduct from which that claim for relief arose. DeVilbiss filed a notice of appeal from that final judgment.

II

FIRST ASSIGNMENT OF ERROR

{¶ 6} "The trial court erred by denying Officer Randall DeVilbiss' administrative appeal from the Jackson Township Board of Trustees' decision to terminate him (May 11, 2009 decision)."

{¶ 7} Jackson Township is a political subdivision of the state of Ohio. R.C. 2506.01 authorizes the courts of common pleas in the county in which the principal office of a political subdivision is situated to review final orders of the political subdivision that determine rights, duties, privileges, or legal relationships. R.C. 2506.04 states:

{¶ 8} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

{¶ 9} Addressing the standards of review for which R.C. 2506.04 provides, the Supreme Court has stated:

{¶ 10} "This statute gives the common pleas court power to weigh the evidence, and to reach a decision reversing the board where the board's decision is not supported by 'the preponderance of substantial, reliable and probative evidence.' This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial,

reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, fn. 4.

{¶ 11} R.C. 505.48(A) authorizes a board of township trustees to create a police district. R.C. 505.49(A) provides that the board "may adopt rules * * * for the operation of the township police district" that include "salary schedules and other conditions of employment for the employees of the township police district." Acting pursuant to that authority, the Jackson Township Trustees promulgated the General Orders of the Jackson Township Police Department.

{¶ 12} The charges filed against DeVilbiss alleged a violation of Section 1.18 of the General Orders of the Jackson Township Police Department, which states: "Officers shall promptly obey any lawful orders of a superior officer." It is undisputed that DeVilbiss was ordered by Chief Schade to submit to a psychological exam and that DeVilbiss declined to comply. DeVilbiss argues, as he did in the trial court, that the order was not lawful, and therefore his termination was invalid, because the order was prohibited by other provisions of the General Orders.

{¶ 13} Section 2.04 of the General Orders of the Jackson Township Police Department authorizes the chief of police to conduct an internal investigation of complaints made against a township police officer. Section 2.04(H) states:

{¶ 14} "The Chief may order an officer to cooperate in an internal investigation. In addition to any other authorized methods, the Chief may utilize the following investigative procedures.

{¶ 15} "2. In an interrogation of an officer, the questions shall be narrowly and directly related to the matter under investigation. If a criminal prosecution is contemplated against an officer who is to be interrogated by the Chief, the officer shall be given the Miranda warnings and allowed to have the counsel or other representative present. If no criminal prosecution is contemplated, the officer may be ordered to respond to questions. Counsel or other representative for the officer may be present at the discretion of the Chief.

{¶ 16} "3. An officer may at any time be ordered to submit to a lineup, breath test, voice print, handwriting exam, or other non-testimonial evidence test. If criminal prosecution of the officer is contemplated, the officer shall be entitled to have counsel or other representative present where provided by law. If criminal prosecution is not contemplated, counsel or representative may be present at the discretion of the Chief.

{¶ 17} "4. An officer may at any time be ordered by the Chief to submit to a polygraph examination which is specifically directed and narrowly related to an

internal investigation. However, when the complaint from a citizen is the basis for the investigation, the infraction is non-criminal, and no corroborating information has been discovered, the officer shall not be required to submit to a polygraph examination unless the citizen also submits to a polygraph examination which is specifically directed and narrowly related to the investigation."

{¶ 18} DeVilbiss argued that his refusal to comply with Chief Schade's order to submit to a psychological examination was not a refusal to obey a lawful order in violation of Section 1.18 of the General Orders, because Section 2.04 does not authorize the Chief to make that order in conducting an internal investigation. The trial court rejected that contention. The court applied the canon of construction ejusdem generis, which permits a linguistic inference interpreting a general term to reflect the class of objects reflected in more specific terms accompanying it. The court then found that a psychological examination is sufficiently similar to the investigative techniques identified in Section 2.04(H)(3) to fall within the general term "other nontestimonial evidence" used. The court further found that DeVilbiss had failed to demonstrate his contention that the psychological examination Chief Schade ordered is outside that "nontestimonial" classification because it would require DeVilbiss to admit to facts relative to the complaints made against him or to make incriminating statements.

{¶ 19} DeVilbiss argues that the trial court abused its discretion in the finding it made because Section 2.04(H)(3) limits the investigative authority of the chief to the procedures identified, which do not include a psychological examination. In support of that contention, he also argues that a psychological examination is more akin to the polygraph examination authorized by Section 2.04(H)(4), which is testimonial in nature, but that section involves limitations the chief's order did not contain.

{¶ 20} Three of the four specific investigative techniques in Section 2.04(H)(3)—lineup, voice print, and handwriting exam—have as their purpose the identification of a person, which may be determined from the result obtained, when identity is in issue. The fourth, a breath test, generally has as its purpose the detection of alcohol impairment, but is likewise nontestimonial. A psychological exam, whether in the form of a personal interview or answers to written questions, requires statements or declarations that are necessarily "testimonial." Therefore, the trial court abused its discretion in finding that the order that Chief Schade gave DeVilbiss is authorized by Section 2.04(H)(3).

{¶ 21} That determination does not necessarily relieve DeVilbiss of the accusation that he failed to obey a lawful order, however. Section 2.04(H) of the General Orders establishes procedures to be followed when particular investigative techniques are used. That section does not, as DeVilbiss contends, either

exclude other investigative techniques or prohibit their use by a township chief of police who performs an internal investigation.

{¶ 22} R.C. 505.49(A)(2) provides that the township chief of police "shall appoint patrol officers." That power necessarily implies the authority to require discipline and good order on the part of the patrol officers the chief appoints. Absent a showing that a particular order is manifestly outside those purposes, or is otherwise unlawful, the order is presumed lawful. We discussed a subordinate officer's duty to obey lawful orders given by a superior officer in *Madison Twp. Bd. of Trustees v. Donohoo* (Oct. 12, 1994), Montgomery App. No. 14007, 1994 WL 692929, at *6, in which we wrote:

{¶ 23} "Law enforcement officers are expected to conform to a higher standard of conduct than the general public. 'For them to command the respect of the public, it is necessary then for these officers even when off duty to comport themselves in a manner that brings credit, not disrespect, upon their department.' *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 43[, 555 N.E.2d 940]. We believe this obligation goes beyond an officer's continuing duty to enforce the law. See *In re Wilkerson* (Apr. 27, 1984), Montgomery App. No. CA–8530[, 1984 WL 4865], unreported. For a paramilitary organization, such as a police department, to command and maintain public respect, it is essential that the internal chain of command be clearly drawn and obeyed. Without respect for, and submission to, authority within the organization, the department may not long command such from without. We are not saying that officers should 'blindly' follow every order, but where the conduct involves the 'failure to obey orders given him by the proper authority,' R.C. 505.491, the potential infectious consequences inside and outside the ranks are great."

{¶ 24} Absent evidence demonstrating that some aspect of the psychological interview to which DeVilbiss was ordered to submit would be unlawful, we cannot find that the order he was given was itself unlawful or that the trial court abused its discretion in finding that the order DeVilbiss was given was a "lawful order" for purposes of Section 1.18 of the General Orders of the Jackson Township Police Department.

{¶ 25} DeVilbiss also argues that the trial court abused its discretion in affirming his discharge because the procedures leading to it were contrary to law.

{¶ 26} R.C. 505.49(B)(2) authorizes township trustees to "appoint a chief of police for the district, determine the number of patrol officers and other personnel required by the district, and establish salary schedules and other conditions of employment for the employees of the township police district." The same section provides that the chief "shall appoint patrol officers" of the township. R.C. 505.49(B)(3) states:

{¶ 27} "Except as provided in division (D) of this section, a patrol officer, other police district employee, or police constable, who has been awarded a certificate attesting to the satisfactory completion of an approved state, county, or municipal police basic training program, as required by section 109.77 of the Revised Code, *may be removed or suspended only under the conditions and by the procedures in sections 505.491 to 505.495 of the Revised Code.*" (Emphasis added.)

{¶ 28} DeVilbiss alleged in his complaint that he "began serving as a Jackson Township Police Officer in 2002" and that he "has been awarded a certificate attesting to the satisfactory completion of an approved basic training program." The board of trustees admitted the truth of both allegations in its answer.

{¶ 29} R.C. 505.491 states:

{¶ 30} "Except as provided in division (D) of section 505.49 or in division (C) of section 509.01 of the Revised Code, *if the board of trustees of a township has reason to believe that* a chief of police, *patrol officer,* or other township police district employee *appointed under division (B) of section 505.49* of the Revised Code or a police constable appointed under division (B) of section 509.01 of the Revised Code *has been guilty, in the performance of the official duty of that* chief of police, *patrol officer,* other township police district employee, or police constable, of bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, neglect *of* duty, gross immorality, habitual drunkenness, incompetence, or *failure to obey orders given that person by the proper authority, the board immediately shall file written charges against that person,* setting forth in detail a statement of the alleged guilt and, at the same time, or as soon thereafter as possible, serve a true copy of those charges upon the person against whom they are made. The service may be made on the person or by leaving a copy of the charges at the office or residence of that person. Return of the service shall be made to the board in the same manner that is provided for the return of the service of summons in a civil action." (Emphasis added.)

{¶ 31} R.C. 509.49(D) and 509.01(C) apply to persons who have been convicted of a felony, and they have no application to DeVilbiss.

{¶ 32} Section 2.04 of the General Orders of the Jackson Township Police Department authorize the chief of police to conduct an internal investigation of a complaint against an officer. Section 2.05(A) provides that "[a]fter the Chief has completed an investigation which shows misconduct on the part of the officer(s), the Chief shall issue the charges and corrective or disciplinary action to the officer complained against on a Charging Form." Section 2.05(E) provides that if the chief recommends "discharge from the Department, the Board of Trustees shall be immediately notified so that a hearing before the Board can be scheduled at the next regular meeting as required by law."

450

{¶ 33} The "Charging Form" dated July 7, 2008, served on DeVilbiss was signed by Chief Schade and filed by him with the board of trustees. That accords with the procedure set out in Section 2.05 of the General Orders. However, it is contrary to the express mandate of R.C. 505.491 that if a board of trustees "has reason to believe" that an officer has been guilty of "failure to obey orders given that person by the proper authority, the board shall immediately file written charges against that person." In this instance the predicate "reason to believe" was found not by the board but by the chief of police, and the charges were filed not by the board upon the reason it found but by the chief upon reasons he found.

{¶ 34} R.C. 505.49(B)(3) states that an officer holding the required certification "may be removed or suspended only under the conditions and by the procedures in sections 505.491 to 505.495 of the Revised Code." R.C. 119.06 states: "No adjudication or order of an agency shall be valid unless the agency is specifically authorized by law to make such an order." The board of trustees' failure to comply with R.C. 505.491 in the procedures leading to DeVilbiss's termination render his termination invalid pursuant to R.C. 119.06.

{¶ 35} The board of trustees argues that DeVilbiss waived his right to complain that his discharge was invalid because he failed to object to the defect in procedure as a basis for the relief he sought in the common pleas court. We do not agree. The complaint DeVilbiss filed alleges:

{¶ 36} "The decision to terminate Randy DeVilbiss was in violation of R.C. 505.491 to 505.495 and the General Orders of the Jackson Township Police Department and Mr. DeVilbiss seeks and is entitled to reversal, for this and other fundamental evidentiary reasons, and pursuant to law."

{¶ 37} The board of trustees also points out that DeVilbiss argued in the trial court that the R.C. 505.491 defect was a due process violation, but that DeVilbiss's fundamental due process rights, which are the rights to notice and an opportunity to be heard, were satisfied by service upon him of the charging form and the hearing the board of trustees held, which DeVilbiss failed to attend. Again, we do not agree.

{¶ 38} An administrative agency exercises quasi-judicial power when it engages in a proceeding that requires notice, hearing, and an opportunity to introduce evidence. *Nielsen v. Ford Motor Co.* (1996), 113 Ohio App.3d 495, 681 N.E.2d 470. Those federal constitutional requirements of due process in no way undertake to control the state's power to determine by what process legal rights may be asserted, or by what process legal rights may be enforced, provided the method of procedure adopted for those purposes gives reasonable notice and an opportunity to be heard before the issues presented are determined. *Bencken-*

*stein v. Schott* (1915), 92 Ohio St. 29, 110 N.E. 633. In other words, the state may add to the requirements for due process in any quasi-judicial administrative proceeding. Furthermore, state agencies may not vary from those requirements by the adoption of their own rules of procedure. *Davis v. State ex rel. Kennedy* (1933), 127 Ohio St. 261, 187 N.E. 867.

{¶ 39} R.C. 505.49(B)(3) states that a township patrol officer who holds the required certificate, as DeVilbiss does, may be removed from his position "only under the conditions and by the procedures in sections 505.491 to 505.495 of the Revised Code." Further, R.C. 119.06 states: "No adjudication order of an agency shall be valid unless the agency is specifically authorized by law to make such order." The plain and unequivocal prohibitions those sections impose confer a right to continued employment on a township police officer in DeVilbiss's position, which the officer is denied when the requirements imposed by R.C. 505.491 are not followed in a procedure resulting in the officer's removal.

{¶ 40} A substantial denial of a procedural right in the course of an administrative proceeding that works a manifest injustice is violative of due process. *Blanchard v. Bur. of Unemp. Comp.* (1968), 14 Ohio Misc. 181, 237 N.E.2d 923. The procedures authorized by Section 2.05 of the General Orders of the Jackson Township Police Department, which were followed in the present case and resulted in DeVilbiss's removal, constitute a substantial denial of the right conferred on DeVilbiss by R.C. 505.491 to have such charges filed by the board of trustees. That substantial denial worked a manifest injustice because it deprived DeVilbiss of the predicate finding by the board of trustees required by R.C. 505.491 of some reason to believe the officer is guilty of one of the causes for removal prescribed by that section before such charges are filed. DeVilbiss's due process rights were denied as a result.

{¶ 41} The first assignment of error is sustained.

SECOND ASSIGNMENT OF ERROR

{¶ 42} "The trial court erred by granting summary judgment in favor of defendants (May 11, 2009 Decision)."

{¶ 43} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of

summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. Further, the issues of law involved are reviewed de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 711 N.E.2d 726.

{¶ 44} An employment relationship is a contract. An unwarranted or wrongful interference in that contractual relationship by third persons is an actionable tort. *Contadino v. Tilow* (1990), 68 Ohio App.3d 463, 589 N.E.2d 48. The plaintiff in such an action must prove that the defendant acted maliciously or wantonly. Id. However, there are those whose position, such as an employee's supervisor, creates a privilege in the actor. In that circumstance, "[w]here * * * the act complained of is within the scope of a defendant's duties, a cause of action in tort for monetary damages does not lie." *Anderson v. Minter* (1972), 32 Ohio St.2d 207, 213, 61 O.O.2d 447, 291 N.E.2d 457. The privilege applies even when the supervisor is alleged to have acted maliciously. Id.; *Daup v. Tower Cellular, Inc.* (2000), 136 Ohio App.3d 555, 737 N.E.2d 128.

{¶ 45} The trial court found that DeVilbiss's claim against Chief Schade for tortious interference in the employment relationship between DeVilbiss and the township trustees cannot lie, because Chief Schade was DeVilbiss's supervisor and acted within the scope of his duties in the orders he gave DeVilbiss and the charge he filed.

{¶ 46} DeVilbiss argues that the trial court erred. He contends that orders he was given to avoid the township resident who had made complaints about him "put DeVilbiss in a position that he was going to be disciplined if he so much as crossed paths with (the resident) in the small town of Farmersville." DeVilbiss argues that Chief Schade "failed to properly investigate the most recent claim raised by (the resident) against DeVilbiss," and that "Schade overstepped his authority by ordering DeVilbiss to submit to psychological examination." Id. That conduct, DeVilbiss argues, presents genuine issues of material fact concerning whether Chief Schade acted outside his scope of employment.

{¶ 47} None of the matters on which DeVilbiss relies were outside the *scope* of Chief Schade's position as chief of police and DeVilbiss's supervisor. Neither do they demonstrate conduct that was wrongful or malicious. DeVilbiss's contentions challenge the wisdom and/or propriety of those decisions, but fail to demonstrate that a general issue of material fact exists with respect to the privilege that the trial court found bars DeVilbiss's claim for tortious interference against Chief Schade.

{¶ 48} The second assignment of error is overruled.

## III

### Conclusion

{¶ 49} Having sustained the first assignment of error, we will reverse and vacate the final judgment of the court of common pleas, in part, and remand the cause to that court to enter judgment for DeVilbiss in his administrative appeal challenging his removal from employment by the Board of Trustees of Jackson Township. The final judgment is otherwise affirmed.

Judgment reversed in part
and affirmed in part.

DONOVAN, P.J., and HARSHA, J., concur.

WILLIAM H. HARSHA, J., of the Fourth District Court of Appeals, sitting by assignment.