[Cite as *Jones v. Wheelersburg Local School Dist.*, 2013-Ohio-3685.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

DANA JONES,                                    :

    Plaintiff-Appellant,                  :     Case No.   12CA3513

    vs.                                        :

WHEELERSBURG LOCAL SCHOOL
 DISTRICT, et al.,                            :     DECISION AND JUDGMENT ENTRY


    Defendants-Appellees.                 :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      James H. Banks, P.O. Box 40, Dublin, Ohio 43017

COUNSEL FOR APPELLEES:      Randall Lambert, 215 South Front Street, P.O. Box 725,
                            Ironton, Ohio 45638

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-19-13
ABELE, J.

{¶ 1}   This is an appeal from a Scioto County Common Pleas Court   decision that

partially granted and partially denied the summary judgment motion filed by Wheelersburg Local

School District Board of Education, Mark Knapp (individually and in his capacity as

superintendent), and George Grice (individually and in his capacity as treasurer), defendants below

and appellees herein.

{¶ 2}   Dana Jones, plaintiff below and appellant herein, assigns the following errors for

review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN CONSIDERING THE AFFIDAVITS OF DEFENDANTS-APPELLEES MARK KNAPP AND GEORGE GRICE IN SUPPORT OF DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DETERMINING THAT STATUTORY IMMUNITY UNDER R.C. CHAPTER 2744 SHIELDS DEFENDANTS-APPELLEES GRICE AND KNAPP FROM LIABILITY."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT'S CLAIMS, SUCH THAT THE JUDGMENT BELOW MUST BE REVERSED."

{¶ 3} Appellant was terminated from her position with Wheelersburg Local School District due to allegations of misappropriated funds. Appellant subsequently filed a complaint against appellees and alleged that (1) appellees caused her "severe and intense emotional and physical distress * * * mental anguish, humiliation, and embarrassment," (2) appellees slandered or defamed her, (3) appellees interfered with contractual relations, and (4) appellees intentionally inflicted emotional distress upon her.

{¶ 4} On October 15, 2010, appellees requested summary judgment. To support their motion, appellees attached Knapp's and Grice's affidavits. In his affidavit, Superintendent Knapp averred that an employee informed him that the latchkey program had received cash payments and that the deposit records failed to show that the cash had been deposited. Knapp explained that he believed he had a duty to report the discrepancy to the State Auditor's Office. Knapp contacted

the auditor and the office advised that it would perform the investigation.   Knapp stated that after the auditor's initial review, appellant was placed on administrative leave with pay.

{¶ 5}   Knapp explained that after the auditor completed the investigation, the auditor's office prepared a report for the prosecuting attorney and recommended that the prosecuting attorney investigate whether to file criminal charges.

{¶ 6}   Knapp stated that he never made "any statements concerning [appellant] other than statements necessary for [him] to fulfill [his] duties concerning the employment investigation and disciplinary procedure."

{¶ 7}   Knapp further relayed the outcome of the disciplinary proceeding and stated that the hearing officer determined that appellant misappropriated funds and recommended that she be terminated.   Knapp attached to his affidavit the auditor's report and the hearing officer's report.

{¶ 8}   In his affidavit, Treasurer Grice testified similarly to Knapp.   He stated that after he learned about the discrepancy between the cash receipts and deposits, he consulted with Knapp and decided to contact the auditor's office.   Grice averred that he believed he had a duty to contact the auditor's office once he learned of the discrepancy.

{¶ 9}   In her opposition memorandum, appellant argued that the court should strike Knapp's and Grice's affidavits and the accompanying documents because the affidavits contained hearsay and that the documents are not proper summary judgment evidence.   Appellant further contended that genuine issues of material fact remain for trial regarding: (1) who was responsible for the funds on a daily basis; (2) whether individual defendants were aware of each employee's responsibilities; (3) whether appellees acted in bad faith or in reckless disregard for appellant's rights and/or for the truth as to the missing money; and (4) whether appellant "was a scapegoat to

protect [appellees] from negative public scrutiny and whether they knew or should have known that the accusations made against plaintiff were false."

{¶ 10} On July 5, 2011, the trial court partially granted and partially denied appellees' summary judgment motion. The court first noted that it would not consider certain documents appellees attached to their summary judgment motion: the auditor's report; a letter from Grice to the auditor; or the Unemployment Compensation Review Commission's decision. The court found that the documents fall outside the type of evidence described in Civ.R. 56(C).

{¶ 11} The court also concluded that because R.C. 2744.09(B) applied to appellant's claims against the school district, the district is not immune from liability under R.C. Chapter 2744. The court determined that although R.C. 2744.09(B) removes the school district's immunity, it does not remove Knapp's and Grice's individual immunity. The court thus determined that Grice and Knapp, individually, are entitled to statutory immunity. The court, however, did not examine whether 2744.03(A)(6) imposes liability upon Grice and Knapp in their individual capacities.

{¶ 12} The trial court then examined whether any genuine issues of material fact remained regarding the merits of appellant's claims. The court determined that no genuine issues of material fact remained regarding appellant's intentional infliction of emotional and physical distress claim because reasonable minds could only conclude that appellees did not engage in extreme and outrageous conduct so as to support appellant's intentional infliction of emotional and physical distress claim.

{¶ 13} The trial court also concluded that genuine issues of material fact remained regarding appellant's slander/defamation claim. The court determined that Grice's and Knapp's

statements to the auditor and to the prosecutor were conditionally privileged. The court further found, however, that genuine issues of material fact remained as to whether Grice and Knapp acted with sufficient malice to defeat the privilege.[1]

{¶ 14} The court additionally concluded that no genuine issues of material fact remained with the claim regarding appellant's interference with contractual relations. The court found that appellant did not have a valid cause of action against her former employer and its employees for the tort of interference with contractual relations.

{¶ 15} The court thus (1) entered summary judgment in favor of Grice and Knapp in their individual capacities regarding all claims, (2) entered summary judgment in favor of Grice, Knapp, and the school district regarding appellant's intentional infliction of emotional and physical distress and interference with contractual relations claims, and (3) denied appellees summary judgment regarding appellant's slander/defamation claim.

{¶ 16} On August 26, 2011, appellant dismissed "her remaining claims * * * without prejudice." She then appealed. We, however, dismissed that appeal for lack of a final appealable order. Jones v. Wheelersburg Loc. Sch. Dist., 4th Dist. No. 11CA3449, 2012-Ohio-3896.

{¶ 17} On September 4, 2012, the trial court entered an "amended" summary judgment and found "no just cause for delay." This appeal followed.

---

[1] Neither party raised any argument to challenge the trial court's decision to deny appellees summary judgment regarding appellant's slander/defamation claim. Both parties assert that appellant dismissed the claim. As we stated in our prior decision, however, a party cannot voluntarily dismiss part of a cause of action against a defendant. Jones v. Wheelersburg Loc. Sch. Dist., 4th Dist. No. 11CA3449, 2012-Ohio-3896, ¶12. We further explicitly noted that the slander/defamation claim remained pending. Id. at ¶13. Thus, we question the validity of appellees' statement in their appellate brief that appellant's "slander and defamation claims are no longer viable." Nonetheless, because neither party has challenged the trial court's decision to deny appellees summary judgment regarding appellant's slander/defamation claim, we need not consider this aspect of the court's decision.

I

{¶ 18} Because we find appellant's third assignment of error dispositive of this appeal, we address it first.

{¶ 19} In her third assignment of error, appellant asserts that the trial court erred by entering summary judgment in appellees' favor. In particular, she contends that genuine issues of material fact remain regarding each of her claims for relief: malicious prosecution; intentional infliction of emotional distress; and interference with contractual relations.

{¶ 20} Appellant claims that genuine issues of material fact remain regarding her malicious prosecution claim because appellees maliciously initiated or procured a criminal prosecution without probable cause. She asserts that factual issues remain as to the extent of appellees' involvement in attempting to prosecute and convict appellant.

{¶ 21} Appellant further asserts that genuine issues of material fact remain regarding her intentional infliction of emotional distress claim. Appellant argues that appellees did not present any evidence to refute the evidence that she presented showing that she suffered health issues and emotional distress as a result of appellees' actions.

{¶ 22} Appellant additionally contends that genuine issues of material fact remain regarding her interference with contractual relations claim because (1) appellees are not immune from liability, and (2) "the malice which may be imputed them based upon the facts of the case, relevant caselaw and the Trial Court's opinion as to slander and defamation, requires a finding that they may be liable to Appellant Jones for their malicious actions."

{¶ 23} Appellant also argues that the following disputed facts constitute genuine issues of material fact that preclude summary judgment: (1) "who was responsible on a daily basis for the

funds at issue"; (2) "whether each Defendant-Appellee was aware of responsibilities of each of

their employees"; (3) whether the Appellees acted in bad faith or in reckless disregard for

[appellant's] rights and/or for the truth as to the 'missing monies'"; (4) "whether [appellant] was a

scapegoat to protect them from negative public scrutiny"; and (5) "whether they knew or should

have known that the accusations they made against [appellant] were false."

A

SUMMARY JUDGMENT STANDARD

{¶ 24} Appellate courts conduct a de novo review of trial court summary judgment

decisions. E.g., Troyer v. Janis, 132 Ohio St.3d 229, 2012-Ohio-2406, 971 N.E.2d 862, ¶6;

Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an

appellate court must independently review the record to determine if summary judgment is

appropriate and need not defer to the trial court's decision. E.g., Brown v. Scioto Bd. of Commrs.,

87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio App.3d 409,

411–12, 599 N.E.2d 786 (1991). To determine whether a trial court properly granted a summary

judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as

well as the applicable law. Civ. R. 56(C) provides in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, written admissions, affidavits, transcripts of
> evidence in the pending case, and written stipulations of fact, if any, timely filed in
> the action, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law. No evidence or stipulation
> may be considered except as stated in this rule. A summary judgment shall not be
> rendered unless it appears from the evidence or stipulation, and only from the
> evidence or stipulation, that reasonable minds can come to but one conclusion and
> that conclusion is adverse to the party against whom the motion for summary
> judgment is made, that party being entitled to have the evidence or stipulation
> construed most strongly in the party's favor.

{¶ 25} Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  E.g., Smith v. McBride, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶12; New Destiny Treatment Ctr., Inc. v. Wheeler, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶24; Vahila v. Hall, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

{¶ 26} In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. Willis Day Warehousing Co., 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978).  Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact.  Specifically, Civ.R. 56(E) provides:

> * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

{¶ 27} Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial.  A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial.

Dresher v. Burt, 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273 (1996); Jackson v. Alert Fire &

Safety Equip., Inc., 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031 (1991).

{¶ 28} The substantive law determines whether a genuine issue of material fact remains.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

Turner v. Turner, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993); Perez v. Scrips-Howard

Broadcasting Co., 35 Ohio St.3d 215, 218-19, 520 N.E.2d 198 (1988).   As the court stated in

Anderson:   "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or

unnecessary will not be counted."

{¶ 29} Thus, to determine whether any of appellant's claimed factual disputes present

genuine issues of material fact that preclude summary judgment, we must examine the substantive

law that governs each claim.

B

MALICIOUS PROSECUTION

{¶ 30} "The tort of malicious prosecution in a criminal setting requires proof of three

essential elements: '(1) malice in instituting or continuing the prosecution, (2) lack of probable

cause, and (3) termination of the prosecution in favor of the accused.'"   Froehlich v. Ohio Dept. of

Mental Health, 114 Ohio St.3d 286, 2007–Ohio–4161, 871 N.E.2d 1159, ¶10, quoting Trussell v.

Gen. Motors Corp., 53 Ohio St.3d 142, 146, 559 N.E.2d 732 (1990).   "However, claims for

malicious prosecution are not favored at law because they 'act as a restraint upon the right to resort

to the courts for lawful redress.'"   Froehlich at ¶9, quoting Guy v. McCartney, 7th Dist. No. 00 JE

7, 2002-Ohio-3035, 2002 WL 1376235, ¶18.

{¶ 31} In order to succeed on a malicious prosecution claim, the plaintiff must establish the lack of probable cause in instituting the criminal proceeding.   Pierce v. Woyma, 8th Dist. No. 94037, 2010–Ohio–5590, ¶19 (stating that "lack of probable cause is the gist of the action").

> "In determining whether the defendant, in instituting the criminal proceeding, acted without probable cause, his conduct should be weighed in view of his situation at the time, and of the facts and circumstances which he knew or was reasonably chargeable with knowing when the proceedings were instituted."

Melanowski v. Judy, 102 Ohio St. 153, 156, 131 N.E. 360 (1921).

> "Probable cause exists when a defendant had a reasonable ground of belief, supported by trustworthy information and circumstances known to the defendant which would be sufficiently strong to cause a reasonable careful person, under similar circumstances, to believe that the prior proceedings and method of presenting the action were reasonable and lawful.   There is no requirement that the defendant must have evidence that will ensure a conviction."

Deoma v. Shaker Heights, 68 Ohio App.3d 72, 77, 587 N.E.2d 425 (8th Dist. 1990) (citations omitted).   A plaintiff cannot establish lack of probable cause simply by showing that the claimant was acquitted of the crime charged.   Pierce at ¶19.

{¶ 32} The return of a grand jury's indictment creates a rebuttable presumption that the proceedings were instituted with probable cause.   Lively v. Donald Dunning DDS, Inc., 8th Dist. No. 98910, 2013-Ohio-1350, ¶11 (citations omitted).   Consequently, when a grand jury has returned an indictment, the plaintiff ordinarily must produce evidence showing that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular.   Deoma, 68 Ohio App.3d at 77.

{¶ 33} In the case at bar, appellees assert that appellant failed to assert a malicious prosecution in her complaint and is therefore barred from raising this new claim in an attempt to avoid summary judgment.   We agree.

"A plaintiff cannot fulfill its Civ.R. 56 burden by merely raising new grounds for recovery in response to a properly supported motion for summary judgment.   Holding otherwise would deprive the defendant of fair notice and an opportunity to respond to the plaintiff's claims.   A plaintiff must respond to a motion for summary judgment based on the claims already presented rather than surprise the defendant and court with new theories of recovery."

Aronhalt v. Castle, 10th Dist. No. 12AP-196, 2012-Ohio-5666, ¶26,

**{¶ 34}** In the case at bar, appellant's complaint did not allege a malicious prosecution claim and did not give appellees sufficient notice of a malicious prosecution claim.   The first count of appellant's complaint reads:

"Defendants' actions were not conducted in a professional manner and were designed to embarrass, humiliate and degrade plaintiff and/or make her a 'scapegoat' for their own misfeasance and/or malfeasance.
Said wrongful acts and/or conduct by defendants were performed knowingly, wantonly, willfully, recklessly, systematically and/or intentionally and in bad faith.
As a direct and proximate result of the wrongful acts and conduct and/or

failures to act of the defendants, plaintiff has suffered loss of income and severe and

intense emotional and physical distress; further, plaintiff has suffered mental

anguish, humiliation, and embarrassment, including but not limited to loss of sleep

and loss of consortium * * *."

Appellant does not allege that appellees maliciously instituted prior proceedings against her or that they lacked probable cause to do so.

**{¶ 35}** Furthermore, even if appellant's complaint properly asserted a malicious prosecution claim, the record does not show that any genuine issues of material fact remain for resolution at trial.   Nothing in the record shows that the criminal proceeding was instituted without probable cause.   Rather, the evidence in the record demonstrates that the prosecutor's office

investigated whether to file criminal charges.   Neither party disputes that appellant subsequently was indicted and that a criminal trial was held.   Under these circumstances, a rebuttable presumption arises that the criminal proceedings were instituted with probable cause and appellant has not presented any evidence to overcome this presumption.    Thus, she is unable to demonstrate that a genuine issue of material fact remains as to whether appellees maliciously prosecuted her.

**{¶ 36}**  Because appellant is unable to demonstrate that a genuine issue of material fact remains as to whether the criminal proceeding was instituted without probable cause, she is unable to demonstrate her malicious prosecution claim.   Assuming, arguendo, that appellant is correct that genuine issues of material fact remain as to whether appellees acted with malice, their malice alone does not prove her malicious prosecution claim.

**{¶ 37}**  Consequently, no genuine issues of material fact remain regarding a malicious prosecution claim.

C

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**{¶ 38}**  Appellant next asserts that the trial court wrongly determined that no genuine issues of material fact remained regarding her intentional infliction of emotional distress claim.

**{¶ 39}**  A successful intentional infliction of emotional distress claim requires a plaintiff to prove each of the following: (1) the defendant intentionally or recklessly caused the plaintiff serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; and (3) the defendant's conduct proximately caused the plaintiff serious emotional distress.  Phung v. Waste Mgmt., Inc., 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994); Yeager v. Local Union 20, 6 Ohio

St.3d 369, 453 N.E.2d 666 (1983), syllabus.         A defendant's conduct is not "extreme and outrageous" even if it is "'tortious or * * * criminal.'"   Yeager, 6 Ohio St.3d at 374, quoting Restatement of the Law 2d, Torts 73, Section 46, comment d (1965).   It also is not "extreme and outrageous" simply because the defendant "'intended to inflict emotional distress,'" or acted with malice.   Id. at 374-375, quoting Restatement, supra.   Instead, "extreme and outrageous" conduct is conduct that is

> "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.   Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'"

Id., quoting Restatement, supra.

{¶ 40} Moreover, "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" do not constitute "extreme and outrageous" conduct.   Yeager, 6 Ohio St.3d at 375, quoting Restatement, supra.   As the Yeager court explained:

> "'The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.   There is no occasion for the law to intervene in every case where some one's feelings are hurt.   There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.   See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *'"

Id., quoting Restatement, supra.

{¶ 41} Whether conduct rises to the level of "extreme and outrageous" conduct constitutes a question of law.   Sturdevant v. Likley, 9th Dist. No. 12CA0024-M, 2013-Ohio-987, ¶23; Morrow v. Reminger & Reminger Co., L.P.A., 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696 (10th

Dist.), ¶48.   Thus, summary judgment in a defendant's favor is warranted when the conduct is not, as a matter of law, "extreme and outrageous."   See Morrow at ¶48 (noting that trial court may dismiss an intentional infliction of emotional distress claim under Civ.R. 12(B)(6) when the conduct is not, as a matter of law, "extreme and outrageous").

{¶ 42}  "'Termination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee.'"   Gradisher v. Barberton Citizens Hosp., 9th Dist. No. 25809, 2011–Ohio–6243, ¶6, quoting Craddock v. Flood Co., 9th Dist. No. 23882, 2008-Ohio-112, ¶20; accord Stanfield v. United States Steel Corp., 9th Dist. No. 12CA010213, 2013-Ohio-2378, ¶29.   Moreover, an employer is not liable for a plaintiff's emotional distress if the employer does no more than "insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Foster v. McDevitt, 31 Ohio App.3d 237, 239, 511 N.E.2d 403 (1986).

{¶ 43} Additionally, accusing an individual of a crime and investigating an individual suspected of a crime generally are not sufficient, standing alone, to demonstrate extreme and outrageous conduct.   Dunina v. Stemple, 2nd Dist. No. 21992, 2008-Ohio-2064, ¶14 (falsely accusing individual of telephone harassment not extreme and outrageous conduct); Hardie v. Shady Hollow Country Club, 5th Dist. No. 1995CA00298 (June 17, 1996) (falsely accusing individual of sexual harassment insufficient to constitute extreme and outrageous conduct); Ashcroft v. Mt. Sinai Medical Ctr., 68 Ohio App.3d 359, 366, 588 N.E.2d 280 (8th  Dist. 1990) (detaining individual based upon probable cause that individual shoplifted not extreme and outrageous conduct).   "A lawfully conducted investigation where wrongdoing is suspected, even if vigorously

or oppressively undertaken, will not be characterized as extreme or outrageous." Branan v. Mac Tools, 10th Dist. No. 03AP-1096, 2004-Ohio-5574, ¶31, citing Motley v. Dilliard's Dept. Store, Summit App. No. CA16489 (July 27, 1994).

{¶ 44} For instance, in Branan at ¶30, the court determined that the following conduct did not constitute extreme and outrageous conduct: (1) the employer interrogated the employee for several hours; (2) the employer twice refused the employee's requests to leave; (3) the employer's Asset Protection Team members exhibited some degree of physical intimidation and repeatedly called the employee a liar and a corporate spy; (4) the employer threatened the employee by telling him that he would never get another job in the industry and would be unable to feed his child; (5) the employer searched the employee's personal belongings in his office and briefcase; and (6) the employer observed appellant's home and took pictures of the home and vehicles parked in front of the home.

{¶ 45} The court concluded that even if the employer's conduct was "reprehensible," it was "not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency' and be regarded as 'atrocious' or 'utterly intolerable in a civilized community.'" Id. at ¶31, quoting Yeager, at 375, 453 N.E.2d 666. Accord Mendlovic v. Life Line Screening of Am., Ltd., 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377 (8th Dist.) ¶¶48-49 (determining as a matter of law that employer's conduct was not extreme and outrageous when the employer "barked" at the employee at a company meeting, yelled at and blamed the employee for bad weather, told the employee that the employee was too busy at work to take vacation, and terminated the employee).

{¶ 46} In Shepard v. Griffin Services, Inc., 2nd Dist. No. 19032 (May 10, 2002), the court

determined that the following conduct was not extreme and outrageous: (1) purposefully

discriminating against the employee based on her sex by treating her less favorably than other

similarly situated male employees and denying her the opportunity to upgrade her position and

increase her pay level; (2) maliciously and recklessly defaming the employee's reputation and

character by accusing her of fraud, falsification of records and deception, without properly

ascertaining the truth of the accusations; (3) publishing private and confidential information about

the employee; (4) retaliating against the employee for making complaints of discrimination; (5)

terminating the employee's employment based upon false accusations and an incomplete

investigation of events; and (6) breaching the contract with the employee.   The court did not

believe that any of the foregoing conduct would "caus[e] an average member of society to exclaim,

'Outrageous!'"

{¶ 47}  In Smith v. Lebanon City Schools, 12th Dist. No. CA99-02-024 (Nov. 8, 1999), the

court concluded that the following conduct failed to rise to the level of extreme and outrageous

conduct: (1) the employer screamed and yelled at the employee; (2) the employer falsely accused

the employee of causing   problems in the treasurer's office and of stealing money; (3) the

employer "repeatedly" berated the employee in front of other people; (4) the employer called the

employee "moronic and uneducated"; and (5) the employer berated the employee for being a

woman.

{¶ 48}  In contrast, in Stanfield, supra, at ¶30, the court determined that genuine issues of

material fact remained as to whether the employer's conduct was extreme and outrageous.   The

employee stated that the employer's face was "all red" and that his veins were "sticking out of his

neck" while he screamed at the employee, accused the employee of lying, and referred to the

employee in a derogatory fashion.  Id.   The employee further testified that her employer's actions

caused her to become "a basket case" such that she never wanted to leave her house.   The

employee claimed that the emotional distress she suffered caused her to develop rashes and hives

and to "sleep all the time" and that she took Zoloft and Atarax to cope with the "stress and

anxiety."  Id.   The appellate court concluded that the trial court improperly determined that the

employer's conduct was not extreme and outrageous "[b]ecause there are issues of material fact

surrounding [the employee]'s departure from [the employer], as well as the extent to which she

suffered emotional distress due to the way she was treated by management * * *."   Id.

{¶ 49}  In the case at bar, we do not believe that appellees' conduct was so extreme and

outrageous as to go "beyond all possible bounds of decency" and was such that it would be

considered utterly intolerable in a civilized community.   The case sub judice bears significantly

more similarities to Branan, Smith, and Shepard than to Stanfield.   Unlike the employee in

Stanfield, appellant has not alleged that Knapp or Grice turned red in the face and had veins

popping out of their necks while yelling or screaming at her, accusing her of lying, and referring to

her in a derogatory fashion.   Instead, appellant's allegations are more like the employees' claims

in Branan, Smith, and Shepard that the employers (1) yelled or screamed, (2) falsely accused the

employees of nefarious acts, (3) subjected them to interrogation, and (4) generally berated the

employees.  Appellant alleged in her affidavit that (1) appellees did not act in a professional

manner when terminating her; (2) appellees' actions "were designed to embarrass, humiliate and

degrade [her] and/or to make [her] a 'scapegoat' for their own misfeasance and/or malfeasance";

(3) appellees "badgered [her] for over four hours"; (4) appellees denied her request for an attorney

and "sarcastically" informed her that she "did not need a lawyer if [she] was innocent"; (5)

appellees denied appellant's request to permit her husband to be present during the four-hour questioning; and (6) appellees falsely accused her of theft.   Even if Grice's and Knapp's conduct was inconsiderate, unkind, unjustified or unprofessional, their conduct was not so extreme and outrageous as to be utterly intolerable in a civilized society.   We cannot state, as a matter of law, that Grice's and Knapp's conduct when investigating the discrepancy in funds would make one exclaim, "Outrageous."   Instead, appellees' actions show, at most, that they subjected appellant to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which are not sufficient to establish a claim for intentional infliction of emotional distress.

{¶ 50}  Appellant's claim that her intentional infliction of emotional distress claim must survive summary judgment because genuine issues of material fact remain regarding whether appellees acted maliciously, recklessly, or wantonly is unavailing.   Neither malice, recklessness, nor wantonness, standing alone, is sufficient to prove intentional infliction of emotional distress.

{¶ 51}  Consequently, the trial court correctly determined that no genuine issues of material fact remain regarding appellant's intentional infliction of emotional distress claim.

D

INTERFERENCE WITH CONTRACTUAL RELATIONS

{¶ 52}  Appellant additionally argues that genuine issues of material fact remain regarding her tortious interference with contractual relations claim.

{¶ 53}  The elements of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.   Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 650 N.E.2d 863 (1995), paragraph two of the

syllabus.

{¶ 54} "An employment relationship is a contract. [Thus, a]n unwarranted or wrongful interference in that contractual relationship by third persons is an actionable tort." DeVilbiss v. Schade, 186 Ohio App.3d 441, 2010-Ohio-493, 928 N.E.2d 785 (2nd Dist.), ¶44. A cause of action for tortious interference with an employment contract will not lie, however, against a supervisory employee acting within the scope of his duties. Anderson v. Minter, 32 Ohio St.2d 207, 291 N.E.2d 457 (1972). As the Anderson court explained:

> "Where, however, the act complained of is within the scope of a defendant's duties, a cause of action in tort or monetary damages does not lie. Nor can liability be predicated simply upon the characterization of such conduct as malicious. See Caverno v. Fellows, (1938), 300 Mass. 331, 15 N.E.2d 483; Freeley v. McAuliffe, (1948), 335 Ill.App. 99, 80 N.E.2d 373; Beane v. Weiman Co., (1969), 5 N.C.App. 279, 168 S.E.2d 233; Ross v. Wright, (1934), 286 Mass. 269, 190 N.E. 514, 98 A.L.R. 468, and cases cited.
> As stated in Johnson v. Aetna Life Ins. Co., [158 Wis. 56, 147 N.W. 32 (1914)], 'Malice makes a bad case worse, but does not make wrong that which is lawful.'"

Id. at 213. "Consequently, liability for tortious interference does not extend to a supervisor who terminates or otherwise impairs the plaintiff's employment while in the course of her own duties," even if the supervisor acts maliciously. Hatton v. Interim Health Care of Columbus, Inc., 10th Dist. No. 06AP-828, 2007-Ohio-1418, ¶25, citing Anderson, 32 Ohio St.2d at 213-214. Accord Lennon v. Cuyahoga Cty. Juvenile Court, 8th Dist. No. 86651, 2006-Ohio-2587, ¶¶19-20 (observing that employee cannot sue employer or supervisor for interference with employment contract); Smiddy v. Kinko's, Inc., 1st Dist. No. C-020222, 2003-Ohio-446, ¶9 ("A person in a supervisory capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce."); Contadino

v. Tilow, (1990), 68 Ohio App.3d 463, 467 ("There are those whose position vis-à-vis the employee and the employer entitles them to intrude upon the employment relationship.").

{¶ 55} In the case at bar, the contract appellant claims appellees interfered with is her teaching contracting with the school district.    Because appellees–appellant's employer and supervisors–committed the interference of which appellant complains, appellant cannot recover for interference with contract.    Meyer v. University of Akron, Ohio Ct. Cl. No. 99-09315 (Jan. 24, 2002) ("Since the contract at issue in this case is between plaintiff and UA, and the decisions complained of were made by agents or employees of UA who were unquestionably acting within the scope of their employment, plaintiff is not entitled to either declaratory judgment or monetary damages on his interference with contract claims.").

{¶ 56} Appellant nevertheless asserts that appellees acted maliciously and that their maliciousness defeats any claimed privilege applicable to her interference with contractual relations claim.    Anderson clearly refutes appellant's argument.    The Anderson court stated that liability for tortious interference with contractual relations cannot "be predicated simply upon the characterization of such conduct as malicious. * * * * 'Malice makes a bad case worse, but does not make wrong that which is lawful.'"    Id. at 213.

{¶ 57} Consequently, the trial court properly determined that no genuine issues of material fact remain regarding appellant's tortious interference with contract claim.

E

DISPUTED FACTUAL ISSUES

{¶ 58} Appellant nevertheless argues that several disputed issues of fact remain: (1) "who was responsible on a daily basis for the funds at issue"; (2) "whether each Defendant-Appellee was

aware of responsibilities of each of their employees"; (3) whether the Appellees acted in bad faith or in reckless disregard for [appellant's] rights and/or for the truth as to the 'missing monies'"; (4) "whether [appellant] was a scapegoat to protect them from negative public scrutiny"; and (5) "whether they knew or should have known that the accusations they made against [appellant] were false."

{¶ 59} Even if these facts remain in dispute, however, we have already determined that appellant cannot demonstrate all of the essential elements of her remaining claims. Thus, assuming arguendo that genuine issues of material fact remain regarding some elements of appellant's claims, her failure to demonstrate that genuine issues of material fact remain regarding each and every element of her claim renders summary judgment appropriate. A party cannot survive a properly supported summary judgment motion simply by showing that genuine issues of material fact remain regarding some of the elements of the party's claim. Instead, the party must show that genuine issues of material fact remain regarding every element of the party's claims.

{¶ 60} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

II

MOOT ASSIGNMENTS OF ERRORS

{¶ 61} In her first assignment of error, appellant argues that the trial court abused its discretion by considering Grice's and Knapp's affidavits. She contends that the affidavits contained hearsay and were not based upon personal knowledge.

{¶ 62} In her second assignment of error, appellant asserts that the trial court wrongly determined that Grice and Knapp were statutorily immune from liability for appellant's claims.

{¶ 63} Our resolution of appellant's third assignment of error renders her first and second assignments of error moot. "'It is not the duty of the court to answer moot questions.'" Tschantz v. Ferguson, 57 Ohio St.3d 131, 133, 566 N.E.2d 655 (1991), quoting Miner v. Witt, 82 Ohio St. 237, 92 N.E. 21, syllabus (1910). "A cause will become moot only when it becomes impossible for a tribunal to grant meaningful relief, even if it were to rule in favor of the party seeking relief." Joys v. Univ. of Toledo, Franklin App. No. 96APE08–1040 (April 29, 1997), citing Miner, 82 Ohio St. at 238–239.

{¶ 64} In our discussion of appellant's third assignment of error, we concluded that appellant cannot succeed on the merits of her claims. Thus, even if we were to agree with appellant that the trial court abused its discretion by considering the affidavits or by determining that Grice and Knapp were entitled to statutory immunity, we could not grant her any meaningful relief. Consequently, our resolution of appellant's third assignment of error renders her first and second assignments of error moot. We therefore decline to address her first and second assignments of error. App.R. 12(A)(1)(c).

III

CONCLUSION

{¶ 65} Accordingly, based upon the foregoing reasons, we hereby affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *Jones v. Wheelersburg Local School Dist.*, 2013-Ohio-3685.]
JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment & Opinion
Hoover, J.: Concurs in Judgment Only

For the Court

BY:_____
Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.