[Cite as *Burks v. Dayton Public Schools BOE*, 2023-Ohio-1227.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| SHIRLETTE "PEGGY" C. BURKS | : | |
| | : | |
| Appellant | : | C.A. No. 29583 |
| | : | |
| v. | : | Trial Court Case No. 2022 CV 01157 |
| | : | |
| DAYTON PUBLIC SCHOOLS BOARD OF EDUCATION, ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 14, 2023

. . . . . . . . . . .

PETER K. NEWMAN, Attorney for Appellant

W. JOSEPH SCHOLLER, CHARLES B. GALVIN, JONATHAN E. ROACH, MARION H. LITTLE, JR., & KRIS BANVARD, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Shirlette C. Burks appeals from two orders of the Montgomery County Common Pleas Court. The first order granted the Dayton Public Schools Board of Education's Civ.R. 12(B)(6) motion to dismiss; the second order denied Burks's motion for leave to amend the complaint regarding additional defendants, Jason

Stuckey and the Law Firm of Bricker & Eckler, LLP. For the following reasons, we affirm the judgments of the trial court.

### I. Procedural History and Facts

{¶ 2} On March 16, 2022, Burks filed a complaint against the Dayton Public Schools Board of Education, Joseph Lacey in his capacity as a Dayton Public Schools Board of Education Member, Judith Spurlock in her capacity as the Former Executive Director of Human Resources for Dayton Public Schools, Jason Stuckey in his capacity as an attorney for Dayton Public Schools Board of Education, by and through his law firm Bricker & Eckler, LLP, as well as the law firm itself.

{¶ 3} The facts alleged in the complaint stated that Burks worked for Dayton Public Schools ("DPS") for over 50 years, most recently as the Principal of Charity Adams Earley Academy for Girls. In the fall of 2017, based on an allegation that another teacher had observed two students engaging in a public display of affection, Burks called the students into her office and engaged in a conversation with them. According to Burks, during the meeting she explained the school's policy against public displays of affection and advised the students not to engage in it at school. According to the mothers of the two students, Burks made derogatory statements to the students during the meeting. The mothers complained to Joseph Lacey, which purportedly resulted in Judith Spurlock's asking Burks to either resign or be terminated. Although Burks denied the allegations made by the mothers and intended to continue working for another five years, she agreed to resign early so long as the Board of Education agreed to two conditions: 1) the Board would keep the parents' allegations "strictly confidential and [they] would never be discussed in

the future," and 2) the Board would not interfere with Burks' retirement and medical benefits. Complaint at ¶ 10. Based on an oral representation from Spurlock on behalf of the Board of Education agreeing to Burks' two conditions, Burks submitted her resignation on March 16, 2018. *Id.* No written document was ever produced regarding the alleged confidentiality agreement to keep the parents' allegations "strictly confidential."

{¶ 4} On March 14, 2019, Burks testified at an unrelated administrative hearing involving the termination of a DPS teacher. During that hearing, Jason Stuckey, who represented the DPS Board of Education, attempted to attack Burks' credibility during cross-examination. *Id.* at ¶ 12. A copy of the transcript from that hearing was attached to the complaint as Plaintiff's Exhibit A. The transcript reflects that Stuckey questioned Burks regarding the charges and specifications made against her by the school district for which she had been placed on paid administrative leave. Complaint Exhibit A, Tr. 439-443. This included the allegations the parents made in 2017. *Id.* According to the complaint, after Burks' testimony was completed, an unnamed attorney informed Stuckey that he had broken the Board's agreement with Burks to keep the allegations confidential, and Stuckey was warned not to breach the confidentiality agreement again. Complaint at ¶ 13.

{¶ 5} On June 5, 2019, Burks testified again during a separate unrelated administrative hearing regarding another DPS teacher's termination. *Id.* at ¶ 14. A copy of the transcript from that hearing was attached to the complaint as Plaintiff's Exhibit B. The transcript reflects that during that hearing, Stuckey again questioned Burks during

cross-examination regarding the charges and specifications made against her by the school district. Complaint Exhibit B, Tr. 693-698. When confronted with an objection to that line of questioning, Stuckey stated that he was "not aware of any confidentiality agreement regarding this." *Id.* at 695. Burks alleged in her complaint that as a proximate cause of Stuckey's first and second breaches of the DPS Board of Education's confidentiality agreement with Burks to keep the parents' false allegations against her confidential, and Stuckey's false assertion that he had not known about the confidentiality agreement, Burks suffered, and continued to suffer, severe emotional distress. Complaint at ¶ 15.

{¶ 6} Based on these facts, in March 2022, Burks alleged a cause of action against DPS Board of Education, Lacey, and Spurlock (collectively identified as " the DPS Board") for tortious interference with a contract. The remaining two causes of action were against all the listed defendants and alleged promissory estoppel and intentional infliction of emotional distress ("IIED").

{¶ 7} In lieu of an answer, on April 15, 2022, defendants Stuckey and Bricker & Eckler, LLP (collectively identified as "the Bricker Defendants") filed a motion to dismiss Burks' complaint pursuant to Civ.R. 12(B)(6). The Bricker Defendants stated that not only did Burks not make any claims that the Bricker Defendants had been involved in making the alleged promises, but her claim for promissory estoppel failed to state a claim against them based on the law of agency. They argued that, as agents of a disclosed principal, the agents could not be held vicariously liable for the actions of the principal in making the promise or agreement. Additionally, the Bricker Defendants argued that the

claim of IIED failed because it was premised on a breach of contract, which is not a tort under Ohio law. Further, they contended that Burks failed to set forth sufficient facts to constitute "extreme and outrageous" conduct as a matter of law.

**{¶ 8}** In response, Burks alleged that the "promissory estoppel claim is based on [the Bricker Defendants'] breach of the fiduciary duty which they owed her to comply with their clients – the [DPS Board] – confidentiality agreement[.]" Burks Motion in Opposition to Bricker Defendants' Motion to Dismiss, p. 1-2. Burks declared that although she "did not specifically allege her breach of fiduciary duty claim against [the Bricker Defendants], her Complaint presents sufficient facts on which this Court can recognize her claim." *Id.* at p. 4. Burks stated that if the trial court disagreed, then "the appropriate remedy would be to grant Mrs. Burks leave to amend her Complaint." *Id.* at p. 6. Burks attached additional documentation to her motion that was not attached to her original complaint.

**{¶ 9}** On May 12, 2022, the Bricker Defendants filed a reply in support of their motion to dismiss in which they chided Burks for attempting to add a new claim for breach of fiduciary duty when it had not previously been raised. Further, they opposed the introduction of any new materials filed with Burks' response.

**{¶ 10}** The trial court sustained the Bricker Defendants' motion to dismiss in its entirety on June 2, 2022. On June 29, 2022, Burks filed a motion for leave to amend her complaint to add a claim of breach of fiduciary duty related only to the Bricker Defendants. The amended complaint also repeated the original claim for IIED but did not include a cause of action for promissory estoppel as to the Bricker Defendants. The trial court denied her motion on August 25, 2022.

**{¶ 11}** Meanwhile, on May 18, 2022, the DPS Board filed a motion to dismiss pursuant to Civ.R. 12(B)(6). The DPS Board alleged that Burks' tortious interference with a contract claim must fail because the Board could not interfere with its own employment contract. Likewise, the DPS Board argued that a cause of action for tortious interference with an employment contract cannot lie against a supervisory employee acting within the scope of his or her duties such that neither Lacey nor Spurlock could be found liable. The DPS Board further argued that as a political subdivision engaged in a governmental function, the DPS Board and its employees could not be found liable under a theory of promissory estoppel and were entitled to immunity. Finally, the DPS Board stated that Burks' claim for IIED was facially deficient as there were no allegations in the complaint that the DPS Board had intended to cause Burks serious emotional distress or that any extreme and outrageous conduct had occurred as a matter of law.

**{¶ 12}** In her response, Burks acknowledged that she could not bring a tortious interference claim against the DPS Board because it was a party to her employment contract. However, she argued that Lacey and Spurlock had acted outside the scope of their duties by engaging in unlawful conduct. Burks further acknowledged that she could not bring a promissory estoppel claim against either Lacey or Spurlock but argued that her promissory estoppel claim against the DPS Board survived because the DPS Board had not been engaged in a governmental function but rather unlawful conduct when (1) Spurlock induced Burks to resign, and (2) the DPS Board breached the confidentiality agreement, i.e., when Stuckey cross-examined Burks during the administrative hearings. Lastly, Burks claimed she alleged sufficient facts to state a claim for IIED because a claim

of IIED implicitly alleges that the defendant acted intentionally since the claim is titled *intentional* infliction of emotional distress. Alternatively, Burks alleged that if the trial court disagreed, then it could grant her leave to file an amended complaint. Finally, Burks claimed that she had sufficiently alleged extreme and outrageous conduct because Lacey and Spurlock failed to investigate the allegations and induced Burks to resign early, and then Stuckey, acting on behalf of the DPS Board, violated the confidentiality agreement. As a result of those actions, Burks suffered severe emotional distress.

{¶ 13} The trial court granted the DPS Board's motion to dismiss in its entirety on August 25, 2022. Burks had never filed a motion to amend her complaint as to the DPS Board.

{¶ 14} Burks filed a timely notice of appeal and raises the following two assignments of error:

I.  The trial court's denial of Burks' Civ.R. 15(A) motion to file an amended complaint alleging breach of fiduciary duty claims against Stuckey and his firm was an abuse of discretion.

II. The trial court also erred in granting the Board, Lacey, and Spurlock's Civ.R. 12(B)(6) motion to dismiss because they did not satisfy their high burden of proof regarding their motion.

## II.  The Bricker Defendants Claims

Burks does not contest the trial court's dismissal of her complaint against the Bricker Defendants but challenges the trial court's denial of her motion for leave to amend the complaint to add a claim for breach of fiduciary duty. Relevant to this case, Civ.R.

15(A) provides that a party may amend its pleading once as a matter of course within 28 days after serving it or within 28 days after service of a Civ.R. 12(B) motion, whichever comes first. Absent compliance with the deadlines, a party may amend its pleading only with the opposing party's written consent or after obtaining leave of court. Civ.R. 15(A). "The mandate of Civ.R. 15(A) as to amendments requiring leave of court, is that leave 'shall be freely given when justice so requires.' Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). However, a motion for leave to amend should not be granted upon a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6, 465 N.E.2d 377 (1984), paragraph two of the syllabus. Further, "[a] trial court properly refuses to grant leave to amend when amendment would be futile." *Maas v. Maas*, 2020-Ohio-5160, 161 N.E.3d 863, ¶ 85 (1st Dist.); *accord Cruz v. Kettering Health Network*, 2d Dist. Montgomery No. 24465, 2012-Ohio-24, ¶ 34.

{¶ 15} "Despite the liberal policy in granting motions to amend, the appellate review of a trial court's decision regarding a motion to amend consists of determining whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made." *Han v. Univ. of Dayton*, 2015-Ohio-346, 28 N.E.3d 547, ¶ 57 (2d Dist.), citing *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio

St.3d 120, 122, 573 N.E.2d 622 (1991). To establish an abuse of discretion, we must conclude that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} Burks filed her complaint on March 16, 2022. The Bricker Defendants filed a Civ.R. 12(B)(6) motion to dismiss on April 15, 2022. Rather than filing an amended complaint, Burks filed a memorandum in opposition to the Bricker Defendants' motion to dismiss. Eventually, Burks filed a motion for leave to amend her complaint on June 29, 2022, nearly a month after the trial court had granted the Bricker Defendants' motion to dismiss the complaint against them in its entirety.

{¶ 17} In her motion to amend the complaint, Burks alleged that because the Bricker Defendants had breached their fiduciary duty, then justice required the court to allow her leave to amend her complaint. However, the facts alleged in her original complaint were identical to the facts she relied upon in her amended complaint. In addition to arguing for the amendment to add a breach of fiduciary duty claim as an independent claim, rather than as part of her promissory estoppel claim, the amended complaint also renewed a claim for IIED, the same one the trial court had previously dismissed.

{¶ 18} In denying Burks' motion to amend her complaint, the trial court explained that it had "granted Defendants' request to dismiss these claims on June 2, 2022. Moreover, as Defendants correctly assert in their Memo Contra, filed on July 13, 2022, the Court finds that the amendments Plaintiff proposes to make to the Complaint would not change the Court's previous ruling and are, therefore, futile." Order Overruling

Motion to Amend Complaint (Aug. 25, 2022). Burks alleges that the trial court's decision was an abuse of discretion because the trial court did not previously dismiss her breach of fiduciary duty claim and her new breach of fiduciary duty claim would not have been futile.

{¶ 19} Burks' Civ.R. 15(A) motion was not timely filed, and the Bricker Defendants did not consent to an amendment; therefore, Burks necessarily had to obtain leave to file an amended complaint. In denying Burks' untimely motion for leave to amend, the trial court provided a reasonable explanation supported by the record. Thus, the decision did not constitute an abuse of discretion.

{¶ 20} First, Burks' claim of IIED had already been rejected by the trial court in granting the Bricker Defendants' motion to dismiss. Likewise, Burks had previously argued that the breach of fiduciary duty was an element of her promissory estoppel claim. Memorandum of Plaintiff in Opposition to Bricker Defendants' Motion to Dismiss at p. 1-2. If the breach of fiduciary claim was subsumed into the promissory estoppel claim, as Burks contended, then the proposed amended complaint would not have made a separate breach of fiduciary duty claim any more viable than it had been previously. Burks also had argued that her original complaint sufficiently pleaded a separate fiduciary claim, although she contended that if it did not, then the proper remedy would have been to grant Burks leave to amend her complaint. *Id.* at p. 5-6. But nothing in the amended complaint remedied the lack of support for the breach of fiduciary duty claim, particularly where Burks' amended complaint relied on exactly the same facts as alleged in the original complaint. We cannot find that the trial court abused its discretion in rejecting

Burks' attempt to revive the dismissed claims absent any variation in the facts or evidence alleged in the original complaint.

{¶ 21} Second, we agree with the trial court that Burks' claim of breach of fiduciary duty was futile. "Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington Steel Prods., Inc.*, 60 Ohio St.3d 120, 573 N.E.2d 622, at syllabus. Here, Burks' amended complaint did not set forth sufficient facts to establish a prima facie showing of support for a claim of breach of fiduciary duty.

{¶ 22} "In order to prove a breach of fiduciary duty claim, the plaintiff must establish (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Sacksteder v. Senney*, 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶ 87. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). "In determining whether a fiduciary relationship has been created, the main question is whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking." *Hope Acad. Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, 46 N.E.3d 665, ¶ 43, citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988).

{¶ 23} "A fiduciary relationship need not be created by contract; it may arise out of an informal relationship [but only] where both parties understand that a special trust or

confidence has been reposed." *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981), citing *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979), paragraph one of the syllabus. However, "[o]ne does not owe a fiduciary duty to another absent proof of a fiduciary relationship, out of which the duties arise." *RPM, Inc. v. Oatey Co.*, 9th Dist. Medina Nos. 3282-M, 3289-M, 2005-Ohio-1280, ¶ 19, citing *In re Termination of Emp. of Pratt* at 115. "The burden of proving the existence of a fiduciary relationship is on the party asserting it." *RPM, Inc.* at ¶ 20, citing *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 451, 635 N.E.2d 1326 (8th Dist.1993).

**{¶ 24}** Burks did not establish a prima facie existence of a fiduciary relationship based on the factual allegations provided in Burks' amended complaint. A tort claim alleging a breach of fiduciary duty necessarily fails when no fiduciary relationship exists out of which the duties arise. "Indeed, a fundamental principle of the law of *all* torts is that a legal right must exist and that this right must be violated in order to warrant redress." (Emphasis sic.) *Pressnell* at 217.

**{¶ 25}** Burks' claim for breach of a fiduciary duty in her amended complaint was based on the following:

> Stuckey and Bricker Law Firm owed fiduciary duties to Burks under both the Restatement of Law Governing Lawyers, §56 and the Ohio Rules of Professional Conduct. Stuckey and his firm breached their fiduciary duties to Burks when Stuckey breached the Board's confidentiality agreement in cross-examining Burks and Stuckey's supervising attorney ratified his misconduct. Stuckey and his firm's breach of their fiduciary duties to Burks

proximately caused her to suffer injuries to which she is entitled to all of the damages she requests including, but not limited to, five years of front pay.

Amended Complaint at ¶ 24.

{¶ 26} Burks first relies on the Restatement of Law Governing Lawyers ("Restatement") section 56, comments c and h to support her claim that the Bricker Defendants owed her fiduciary duties.   Burks has not cited any cases or legal authority, nor have we found any, that demonstrate Ohio has adopted the Restatement section 56 in the manner Burks suggests.   Restatement section 56, comment c, provides in part that,

When a lawyer advises or assists a client in acts that subject the client to civil liability to others, those others may seek to hold the lawyer liable along with or instead of the client.   Whether a lawyer is liable depends on the elements of liability under the law upon which the claim of liability is predicated and may therefore turn on such factors as how the lawyer's acts contributed to the plaintiff's harm, what the lawyer knew or believed as to the relevant facts and law, the lawyer's intent, and how culpable the client's conduct is under the law. * * *

A lawyer, like other agents, is not as such liable for acts of a client that make the client liable. Thus, a lawyer is not liable to a nonclient for advising a client whether proposed client conduct would be lawful or for counseling a client to break a contract in the client's interest[.]

In this instance, the Restatement does not create a fiduciary duty where one does not

already exist.

{¶ 27} Likewise, Restatement section 56, comment h, provides in relevant part that "[l]awyers are also liable to nonclients for knowingly participating in their clients' breach of fiduciary duties owed by clients to nonclients * * *. A lawyer may also assume fiduciary duties to a nonclient, for example by becoming a trustee or in some jurisdictions by seeking and obtaining a nonclient's trust, and the lawyer is then liable to such a nonclient under the general law on the same basis as other fiduciaries." Again, the Restatement does not create a fiduciary duty imposed upon a lawyer where the fiduciary duty was not already imposed upon the client, or where special circumstances exist, neither of which apply here. Burks did not allege that the Bricker Defendants were involved in making the alleged oral agreement or that any attorney-client relationship existed between them. To the contrary, the Bricker Defendants were performing under an obviously conflicting and independent duty to their client, the DPS Board, during the administrative hearings. We see nothing in the Restatement that imposes a fiduciary duty on the Bricker Defendants under these facts. Thus, Burks' reliance on the Restatement is unavailing.

{¶ 28} Burks similarly argued that the Ohio Rules of Professional Conduct created a fiduciary duty. She again provided no case law or legal authority in support of her argument, and we have not found any. The Rules of Professional Conduct state that a "[v]iolation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. * * * The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis

for civil liability."  Prof.Cond.R. Preamble, ¶ 20.   Thus, while the standards established by the Rules may be relevant in determining the propriety of an attorney's conduct for disciplinary proceedings, they do not impose a fiduciary duty on an attorney.

{¶ 29} If Burks believed that Stuckey had violated the Rules of Professional Conduct, she could have filed a complaint alleging attorney misconduct with the appropriate authorities.  But we see nothing in the Rules that created a fiduciary duty upon the Bricker Defendants that would have resulted in their being liable under a claim for breach of fiduciary duties based on the facts alleged in the amended complaint.

{¶ 30} As explained above, the relationship between the parties is what determines whether a fiduciary duty is owed.   There are simply no facts in Burks' amended complaint that establish a fiduciary duty owed to her by the Bricker Defendants.   Consequently, the trial court did not abuse its discretion in denying Burks' untimely motion to amend the complaint.   The first assignment of error is overruled.

### III.    DPS Board Claims

{¶ 31} Burks' second assignment of error concerns the trial court's decision sustaining DPS Board's Civ.R. 12(B)(6) motion to dismiss Burks' claims for tortious interference with a contract, promissory estoppel, and IIED.  According to Burks, she presented sufficient facts in her complaint to entitle her to relief such that the trial court erred in dismissing each of her claims.   We will address each claim in the order set forth in the complaint, but first we will outline the standards of review applicable to these claims.

### a.  Civ.R. 12(B)(6) Motion to Dismiss For Failure to State a Claim

{¶ 32} In Ohio, under notice pleading, a plaintiff need not prove his or her case at

the pleading stage. *DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 10th Dist. Franklin No. 18AP-567, 2019-Ohio-3158, ¶ 10. A plaintiff is required under Civ.R. 8(A) to provide a short and plain statement of the claim demonstrating that the claimant is entitled to relief. *McBride v. Parker*, 5th Dist. Richland No. 11 CA 122, 2012-Ohio-2522, ¶ 27. "A motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R.12(B)(6), tests the sufficiency of a complaint." *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, 40 N.E.3d 661, ¶ 5 (2d Dist.). "Dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in [plaintiff's] favor, it appears beyond doubt that [plaintiff] can prove no set of facts warranting relief." *Clark v. Connor*, 82 Ohio St.3d 309, 311, 695 N.E.2d 751 (1998), citing *State ex rel. Lanham v. Ohio Adult Parole Auth.*, 80 Ohio St.3d 425, 426, 687 N.E.2d 283 (1997).

{¶ 33} In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207, 680 N.E.2d 985 (1997). Nevertheless, if a plaintiff attaches documents to the complaint or they are incorporated therein, such documents can be considered, but they may also be used to the plaintiff's detriment to dismiss the case if they, along with the complaint itself, establish a failure to state a claim. *State ex rel. Semenchuk v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 19AP-361, 2019-Ohio-4641, ¶ 11. Although Ohio has liberal pleading rules and a notice-pleading standard, a cause of action must be factually supported, and courts need not accept as true any

unsupported or conclusory legal propositions advanced in the complaint. (Citations omitted.) *White v. Family Dollar*, 2d Dist. Montgomery No. 29549, 2023-Ohio-329, ¶ 8.

{¶ 34} Appellate review of a trial court's order granting a Civ.R. 12(B)(6) motion to dismiss is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. "This means that we conduct an independent review, giving no deference to the trial court's decision on matters of law." (Citations omitted.) *Jordan v. Howard*, 2d Dist. Montgomery No. 29190, 2021-Ohio-4025, ¶ 23.

### b. Tortious Interference with a Contract

{¶ 35} "The elements of the tort of tortious interference with a contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., LPA v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), paragraph one of the syllabus. "An employment relationship is a contract. An unwarranted or wrongful interference in that contractual relationship by third persons is an actionable tort. * * * The plaintiff in such an action must prove that the defendant acted maliciously or wantonly." (Citation omitted.) *DeVilbiss v. Schade*, 186 Ohio App.3d 441, 2010-Ohio-493, 928 N.E.2d 785, ¶ 44 (2d Dist.). However, " 'liability for tortious interference does not extend to a supervisor who terminates or otherwise impairs the plaintiff's employment while in the course of her own duties,' even if the supervisor acts maliciously." *Jones v. Wheelersburg Local. School Dist.*, 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, ¶ 54, quoting *Hatton v. Interim Health Care of Columbus, Inc.*, 10th Dist. Franklin No. 06AP-828, 2007-Ohio-1418, ¶ 25, citing *Anderson*

*v. Minter*, 32 Ohio St.2d 207, 213-214, 291 N.E.2d 457 (1972).

{¶ 36} Here, the contract Burks claims the DPS Board interfered with was her employment contract with the DPS Board of Education.  Because the DPS Board of Education was alleged to have committed the interference of which Burks complains, she cannot recover for interference with a contract as to that party.  "It is axiomatic that the wrongdoer must be a non-party to the contract." *Castle Hill Holdings, L.L.C. v. Al Hut, Inc.,* 8th Dist. Cuyahoga No. 86442, 2006-Ohio-1353, ¶ 47.  Notably, in Burks' reply to the DPS Board's motion to dismiss, Burks conceded that she could not bring a tortious interference claim against the Board because it was a party to her employment contract. Thus, the trial court did not err in dismissing Burks' claim of tortious interference with a contract as to the DPS Board.

{¶ 37} However, on appeal, Burks contends that Lacey and Spurlock acted outside the scope of their official duties by failing to properly investigate the parents' allegations before seeking her resignation which, according to Burks, constituted unlawful conduct. Therefore, she argues, she could pursue a claim of tortious interference with a contract as to those parties.  The trial court found that the complaint had not alleged that Lacey and Spurlock acted outside the scope of their employment and dismissed Burks' claim. We agree with the trial court.

{¶ 38} The acts alleged in the complaint to constitute tortious interference with a contract were that Lacey and Spurlock:

intentionally procured the breach of Ms. Burks' employment contract by forcing her to resign five years earlier than she had planned.   Because the

students' allegations against Ms. Burks were false and neither Defendant Lacey nor Defendant Spurlock conducted any independent investigation into whether the students or parents were telling the truth, Defendants Lacey and Spurlock had no justification for procuring the breach of Ms. Burk's employment contract.

Complaint at ¶ 18.

{¶ 39} According to the complaint, Lacey was a member of the DPS Board of Education and Spurlock was DPS's Executive Director of Human Resources when Burks resigned from her position. Both individuals were identified and served with the complaint in their official capacities as employees of DPS. Here, the two mothers had complained directly to Lacey, in his capacity as a member of the DPS Board of Education, of Burks' alleged misconduct. Lacey then reported the information to the DPS Superintendent, who was considered the executive officer of the Board pursuant to R.C. 3319.01, and to Spurlock. Spurlock, acting in her capacity as the Executive Director of Human Resources on behalf of DPS Board, discussed alternatives for Burks' dismissal: either resign or be terminated. According to the documents attached to Burks' complaint, by the time Burks agreed to resign in March 2018, the district had issued charges and specifications against her, which is the initiation of R.C. 3319.16 termination proceedings. Complaint Exhibit A at Tr. 439-440; Complaint Exhibit B at Tr. 695.

{¶ 40} Generally, the concept of "scope of employment" "denotes an agency relationship in which the agent or employee is engaged in an activity that is logically related to the business of the principal or employer." *Theobald v. Univ. of Cincinnati*, 111

Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶ 15. Actions of the Board of Education necessarily include hiring and firing decisions of principals. *See* R.C. 3319.07 (employment of teachers by board of education); R.C. 3319.09 ("teacher" includes all persons licensed to teach and who are employed in the public schools of this state as a principal); R.C. 3319.16 (termination of teacher contracts by board of education). Accordingly, the actions of Lacey and Spurlock fell within the scope of their respective employments. We see nothing unlawful about their failure to conduct a more thorough investigation which would impose liability on either Lacey or Spurlock. The trial court reasonably dismissed Burks' remaining claims for tortious interference with a contract.

### c. Promissory Estoppel

{¶ 41} In Burks' response to the DPS Board's motion to dismiss, she acknowledged that she could not bring a promissory estoppel claim against either Lacey or Spurlock. Plaintiff's Memorandum in Opposition to the DPS Board of Education, Joseph Lacey, and Judith Spurlock's Motion to Dismiss, p. 6, fn. 1. Therefore, the trial court did not err in dismissing the promissory estoppel claim as to Lacey and Spurlock, and we will only consider the trial court's dismissal of Burks' claim against the DPS Board.

{¶ 42} The trial court dismissed Burks' promissory estoppel claim against the DPS Board because Burks had not alleged that the DPS Board, Spurlock, or Lacey breached the alleged agreement, and further, she had "failed to allege any set of facts upon which [she] could prevail on a claim for promissory estoppel" against the DPS Board. Decision, Order, and Entry Sustaining Motion to Dismiss, August 25, 2022, p. 4-5. Burks first asserts that the trial court improperly created a "new defense" for the DPS Board because

the DPS Board only relied upon the defense that promissory estoppel was inapplicable against a political subdivision. Thus, she alleges that the trial court granted the dismissal on grounds other than those raised by the Defendants. We do not agree with Burks' interpretation.

{¶ 43} A trial court reviews a Civ.R. 12(B)(6) motion to dismiss based on whether, after presuming the truth of all factual allegations of the complaint and making all reasonable inferences in a nonmoving party's favor, it appears beyond doubt that the nonmoving party could prove no set of facts entitling the moving party to the requested relief. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In this case, after reviewing the facts alleged in the complaint, the trial court found that Burks could prove no set of facts upon which she could prevail. Thus, the trial court was not "going to bat" for the DPS Board, as Burks contends, but making a legal determination based on the appropriate standard of review.

{¶ 44} Burks next complains that the trial court erred in dismissing her promissory estoppel claim against the DPS Board because she presented sufficient facts upon which she could prevail. At the heart of Burks' allegations, she claims that Spurlock, on behalf of the DPS Board, made an oral promise to never disclose the parents' allegations in exchange for Burks' agreeing to submit her resignation earlier than she intended. But Stuckey, acting as an agent of the Board, broke that negotiated promise approximately one year later during the cross-examination of Burks in two separate administrative hearings. Both parties agree that the doctrine of promissory estoppel is "inapplicable against a political subdivision when the political subdivision is engaged in a governmental

function." *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 25. However, according to Burks, the DPS Board was not engaged in a governmental function entitling it to immunity.

{¶ 45} Pursuant to R.C. 2744.01(F), a "political subdivision" includes a school district. Thus, the DPS Board of Education is a political subdivision. R.C. 2744.01(C)(2)(c) provides that a "governmental function" means a function of a political subdivision that includes, but is not limited to, "[t]he provision of a system of public education." This governmental function "extends to most school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process." *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12. A "governmental function" also includes "[j]udicial, quasi-judicial, prosecutorial, legislative, or quasi legislative functions." R.C. 2744.01(C)(2)(f).

{¶ 46} In the documents included with Burks' complaint, Burks acknowledged that prior to her resignation in March 2018, the district had issued charges and specifications against her, which constituted the initiation of R.C. 3319.16 termination proceedings. Complaint Exhibit A at Tr. 439-440; Complaint Exhibit B at Tr. 695. Spurlock, acting in her official capacity on behalf of the DPS Board, offered Burks the opportunity to either resign or be fired through the administrative process. The act of hiring or firing principals in public schools is a governmental function because "[t]his activity is so fundamental to the provision of a system of public education that it cannot be considered apart from the governmental function of 'providing a system of public education.' " *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262, ¶ 16. Moreover, the entirety of hiring

and firing principals in public schools is regulated by the Ohio Revised Code and overseen by the Board of Education. R.C. 3319.02(D)(3) explicitly states that "[t]ermination of an assistant superintendent, principal, assistant principal, or other administrator's contract shall be pursuant to section 3319.16 of the Revised Code." Thus, the DPS Board's involvement in Burks' termination was a governmental function.

{¶ 47} Stuckey, acting as an agent of the DPS Board, was actively participating in R.C. 3319.16 administrative hearings at the time Burks alleged he breached the oral confidentiality agreement. Administrative proceedings conducted pursuant to R.C. 3319.16 are the result of the procedural requirements that must be followed before a teacher's contract may be terminated for disciplinary reasons by the Board of Education. R.C. 3319.16 administrative hearings are presided over by either a referee or a majority of the members of the Board, notice must be provided, and a hearing must be held wherein the teacher is afforded the opportunity to be heard and to introduce evidence. After the hearing, a final determination is made by the Board whether to terminate the teacher, which can be reviewed by the Court of Common Pleas. Considering the foregoing, the administrative hearing process is a quasi-judicial function of the Board of Education. *See Rankin-Thoman, Inc. v. Caldwell*, 42 Ohio St.2d 436, 438, 329 N.E.2d 686 (1975) ("Quasi-judicial proceedings require notice, hearing and the opportunity for introduction of evidence.") Stuckey was not only engaged in quasi-judicial proceedings but was also participating in the firing process of a DPS teacher and, therefore, was engaged in a governmental function.

{¶ 48} The facts alleged in Burks' complaint demonstrate that each of the

employees, acting on behalf of the Board, were engaged in governmental functions, and governmental functions retain the blanket protection of immunity for promissory estoppel claims. Accordingly, Burks' promissory estoppel claim was barred as a matter of law.

### d. Intentional infliction of emotional distress

{¶ 49} Finally, Burks argues that the trial court erred in dismissing her claim for intentional infliction of emotional distress. In dismissing this cause of action against the DPS Board, the trial court found that none of the allegations in Burks' complaint described behavior that would be considered intolerable in a civilized society or so outrageous as to go beyond the bounds of decency. We agree with the trial court.

{¶ 50} While not discussed by the parties or the trial court, we are concerned with the timing of Burks' complaint. The events that transpired involving Lacey and Spurlock necessarily occurred prior to Burks' resignation on March 16, 2018. Burks filed her complaint on March 16, 2022, four years after her resignation. Ordinarily, claims for intentional infliction of emotional distress are subject to a four-year statute of limitations. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983), citing R.C. 2305.09. However, the statute of limitations for suing a political subdivision and its employees is two years under R.C. 2744.04(A). "R.C. 2744.04(A) is a *special* provision governing the statute of limitations in tort cases against political subdivisions and it prevails over the *general* statutes of limitations contained in R.C. Chapter 2305." (Emphasis sic.) *Read v. Fairview Park*, 146 Ohio App.3d 15, 20, 764 N.E.2d 1079 (8th Dist.2001). Therefore, the two-year limitations period of R.C. 2744.04 prevails over the general four-year limitations period

for claims of intentional infliction of emotional distress under these circumstances. In any event, because this issue was never considered below and we agree with the trial court that Burks' complaint failed to allege sufficient facts to prevail on a claim for IIED, we need not delve into this issue further.

{¶ 51} In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: "(1) that the defendant either intended to cause emotional distress to the plaintiff, or knew or should have known that the actions would result in serious emotional distress to the plaintiff, (2) that the defendant's conduct was so extreme and outrageous as to go beyond all bounds of decency and was such that it can be considered utterly intolerable in a civilized society, (3) that the defendant's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is so serious that no reasonable person could be expected to endure it." *Cline v. Tecumseh Local Bd. of Edn.*, 2d Dist. Clark No. 2020-CA-36, 2021-Ohio-1329, ¶ 26, citing *Chaney v. Potsdam*, 2d Dist. Miami No. 2004-CA-19, 2005-Ohio-603, ¶ 98. The emotional injury sustained must be so debilitating and severe that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

{¶ 52} "The issue of whether conduct rises to the level of 'extreme and outrageous' is a question of law." (Citations omitted.) *Spitulski v. Bd. of Edn. of the Toledo City School Dist.*, 2018-Ohio-3984, 121 N.E.3d 41, ¶ 61 (6th Dist.). Therefore, "[a] trial court may dismiss a claim for intentional infliction of emotional distress, pursuant to Civ.R.

12(B)(6), where the alleged conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Morrow v. Reminger & Reminger Co., LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 48 (10th Dist.). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Yeager* at 375, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

{¶ 53} In support for her argument that the trial court erred in dismissing her claim for IIED, Burks merely reasserts the facts alleged in her complaint specifically addressing IIED. While Burks claimed that "all of the Defendants engaged in extreme and outrageous conduct against Ms. Burks," this conclusory legal proposition is not factually supported. Taking as true all the allegations in the complaint, neither Lacey's nor Spurlock's actions rose to the level of extreme and outrageous conduct as a matter of law. The claims against Lacey and Spurlock boiled down to the criticism that they should have conducted an independent investigation into the parents' allegations prior to offering Burks the option to resign or be fired. But the failure to conduct additional investigation and offering Burks the option to resign or be fired did not rise to the level of being so extreme and outrageous "as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*

{¶ 54} As for the Bricker Defendants, because the trial court properly denied Burks' motion to amend her complaint, there were no outstanding viable claims against the Bricker Defendants.   Likewise, no viable claims remained regarding Lacey or Spurlock. Therefore, the DPS Board could not be held liable through the doctrine of respondeat superior.   "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment.   Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.' " *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991), quoting *Little Miami RR. Co. v. Wetmore*, 19 Ohio St. 110, 132 (1869); *Taylor v. Doctor's Hosp.*, 21 Ohio App.3d 154, 486 N.E.2d 1249 (10th Dist.1985).   "However, when an employee accused of wrongdoing has been found to have no liability to the party claiming injury, the employer cannot be independently found liable under a theory of respondeat superior since any liability of the employer is only derivative of that of the employee." *Han*, 2015-Ohio-346, 28 N.E.3d 547, at ¶ 50.

{¶ 55} We conclude that, because there were no remaining viable claims against Lacey, Spurlock, or the Bricker Defendants, the DPS Board could not be liable under the theory of respondeat superior.   Accordingly, the trial court properly dismissed Burks' IIED claims against the DPS Board.

{¶ 56} Having rejected each of Burks' arguments relating to the DPS Board, we overrule her second assignment of error.

### IV.    Conclusion

{¶ 57} Having overruled each of Burks' assignments of error, we affirm the judgments of the trial court.

. . . . . . . . . . . . .


WELBAUM, P.J. and TUCKER, J., concur.